CROSSETT WESTERN COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 46278, 63823.   Promulgated December 8, 1932.

*Robert T. Jacob, Esq.*, for the petitioner.
*W. E. Davis, Esq.*, for the respondent.

OPINION.

MARQUETTE: The principal question in these proceedings is whether the petitioner and the Gales Creek Logging Company were entitled to file consolidated returns for 1924 and subsequent years by reason of affiliation. Respondent determined with respect to the year 1924 that there was no showing of a disproportion in the intercompany accounts such as would warrant the consolidation of accounts under section 240 (d) of the Revenue Act of 1924. That section reads as follows: ·

In any case of two or more related trades or businesses * * * owned or controlled directly or indirectly by the same interests, the Commissioner may and at the request of the taxpayer shall, if necessary in order to make accurate distribution or apportionment of gains, profits, income, deductions, or capital between or among such related trades or businesses, consolidate the accounts of such related trades or businesses.

The evidence here presented shows a close business relationship between the two companies, joint purchasing of supplies, frequent exchange of equipment and of employees' services, and that both companies used the same accounting system. But that is not sufficient, we think, to prove that a proper apportionment of gains, profits, income, deductions, or capital between the two companies could not be made without consolidating the accounts. Respondent has in fact made such apportionment without consolidation, and petitioner has failed to sustain the burden of showing that respondent's determination was erroneous.

The Revenue Act of 1924 also provides that:

SEC. 240. (a) Corporations which are affiliated within the meaning of this section may, for any taxable year, make separate returns or, under regulations prescribed by the Commissioner, with the approval of the Secretary, make a consolidated return of net income for the purpose of this title, in which case the taxes thereunder shall be computed and determined upon the basis of such return. If return is made on either of such bases, all returns thereafter made shall be upon the same basis unless permission to change the basis is granted by the Commissioner.

\* \* \* \* \* \* \*

(c) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns at least 95 per centum of the voting stock of the other or others, or (2) if at least 95 per centum of the voting stock of two or more corporations is owned by the same interests. * * *.

The Revenue Acts of 1926 and 1928 contain the same provisions.

At the close of the year 1924, eleven of the twenty-eight persons holding all of petitioner's capital stock owned 21.472 per cent of

the Logging Company's voting stock. Another 72.701 per cent was owned by petitioner itself, while the remaining 5.827 per cent was owned by seven persons holding none of petitioner's stock. Manifestly, there was no affiliation of the first class, for petitioner did not own 95 per cent of Logging Company stock until November, 1928. Then, did the same interests own the required amount of stock in both companies for affiliation of the second class? We think not.

The statute requires such common holdings to amount to at least 95 per cent. That is, not less than 95 per cent of stock in both companies must be held by the same interests before the benefit of the statute may be invoked.

In the present case, unless we regard petitioner as of the "same interests" as its stockholders, there is not even an approximation of meeting the statutory requirement.

The petitioner asks us to treat the ownership of its stock by groups, rather than by individuals, and to consider its own holdings of Logging Company stock as being proportionately owned by the persons composing the various groups. On that basis, for 1924 we have stockholdings as follows:

| Groups | Petitioner's stock | Logging company stock |
|---|---|---|
| | Per cent | Per cent |
| Group A.—Crossett family (6 members) | 57. 370 | 43. 562 |
| Group B.—Watzek family (10 members) | 27. 434 | 23. 944 |
| Group C.—Gates family (8 members) | 11. 289 | 10. 024 |
| Group D.—Employees (8 members) | 3. 010 | 19. 274 |
| Total | 99. 103 | 96. 804 |

As a matter of record, however, the Logging Company stock was held, 1.853 per cent by two members of Group A, 3.999 per cent by five members of Group B, 1.817 per cent by one member of Group C, and 17.086 by the eight members of Group D, five of whom held none of petitioner's stock. Petitioner, itself, a separate entity, owned 72.701 per cent of the Logging Company stock. Substantially similar results obtained until November 15, 1928, although the personnel of the above groups, and their respective stockholdings, varied somewhat from year to year.

In our opinion the petitioner's theory does not correctly interpret the statutory requirements. It is elementary that property owned by a corporation is not the property, pro rata, of the corporate shareholders unless and until distribution is made. The Supreme Court, in *Handy & Harman* v. *Burnet*, 284 U. S. 136, held that the "same interests" within the meaning of the revenue acts, are "the

beneficial owners in like proportions " of stock of the corporations involved. The court further said:

It would require very plain language to show that Congress intended to permit consolidated returns to depend on a basis so indefinite and uncertain as control of stock without title, beneficial ownership or legal means to enforce it. Control resting solely on acquiescence, the exigencies of business, or other considerations having no binding force, is not sufficient to satisfy the statute.

Although the court was there considering a statute which provided for affiliation when " substantially all " the stock of the corporations was owned or controlled by the same interests, we think the words above quoted are definitely applicable here. The stock of the Logging Company owned by petitioner was not owned by petitioner's individual stockholders. Lacking, as they did, all the necessary elements laid down by the Supreme Court, title, beneficial ownership, or the legal power to enforce it, we certainly can not say that petitioner's stockholders were also the owners, pro rata of the Logging Company stock owned by petitioner. We therefore sustain the respondent's determination that there was no affiliation of petitioner and the Logging Company by reason of common ownership of the stock of the two companies.

On November 15, 1928, petitioner had acquired more than 95 per cent of the Logging Company stock. For that calendar year the two companies filed consolidated returns, but respondent required the Logging Company to file one return as a separate corporation for the period January 1 to November 15, 1928, and also a return as an affiliate with the petitioner from November 16 to December 31. Respondent contends that each part of the calendar year for which he required return to be filed constitutes a taxable year with respect to carrying forward deductible losses.

The Revenue Act of 1928, section 48, provides in part that:

"Taxable year " includes, in the case of a return made for a fractional part of a year under the provisions of this title or under regulations prescribed by the Commissioner with the approval of the Secretary, the period for which such return is made.

That wording is identical with like provisions in the Revenue Acts of 1924 and 1926, section 200 (a).

Under that provision each portion of the year of affiliation becomes a taxable year with respect to the allowance of net loss deductions and, where then existing corporations are affiliated during a fiscal or calendar year, separate returns may be required for the period prior to affiliation and a consolidated return for the subsequent period. See *Tolerton & Warfield Co.*, 23 B. T. A. 892; *Automatic Fire Alarm Co.*, 13 B. T. A. 1195; *Green River Distilling Co.*, 16 B. T. A. 395. In the present case petitioner filed a consolidated

return for the entire year of 1928, which was disallowed with respect to the period January 1 to November 15. Respondent allowed a consolidated return for the remainder of the year and there is no complaint on that score. The circumstances bring this proceeding squarely in line with the decisions above cited and we sustain the respondent's determination on that point.

By article 41 (c) of Regulations 75, it is provided, respecting the year 1929 and subsequent years, that:

A net loss sustained by a corporation prior to the date upon which its income is included in the consolidated return of an affiliated group * * * shall be allowed as a deduction in computing the consolidated net income of such group in the same manner, to the same extent, and upon the same conditions as if the consolidated income were the income of such corporation. * * *

The petitioner contends that under the above provision of Regulations 75 the net losses of the Logging Company for the years 1927 and 1928 are deductible in computing consolidated net income for the year 1929; that in no other way can the full privileges of that provision be enjoyed.

In our opinion the contention is not valid. It disregards the fact that under section 48 of the controlling statute, *supra*, each taxable portion of the year 1928 became a taxable year. If there is any conflict between the statute and the regulations interpreting it, the latter must yield. But we think they are not conflicting in his instance. The provision of Regulations 75 upon which petitioner relies is but one paragraph of several, all dealing with the general subject of net losses of affiliates sustained during taxable years. The paragraph immediately following the one in question provides that any period of less than twelve months for which either a separate return or a consolidated return is filed shall be considered as a taxable year. It is clear to us that the specific paragraph relied upon by petitioner can not be treated as isolated and independent, but must be considered in connection with, and as a part of the whole regulation respecting net loss deductions by affiliated groups. Under section 117 of the Revenue Act of 1928 net loss deductions are limited to losses occurring in the two taxable years immediately preceding that for which the deduction is to be made.

In *Woolford Realty Co.* v. *Rose*, 286 U. S. 319, corporation A suffered net losses for each of the years 1925, 1926 and 1927. Corporation B had net gains for the year 1927, and in that year the two companies became affiliated. The court held that A's net losses for 1925 and 1926 could not be deducted from the combined income of A and B for the year 1927. See, also, *Riley Stoker Corp.*, 26 B. T. A. 749. Those decisions are applicable here, so far as the year 1928 is involved, but not to the year 1929, because of changes in the law. It does not appear that respondent has violated the principles fol-

lowed in those cases in computing the deficiency for the year 1929. In our opinion that determination should be sustained.

*Decision will be entered for the respondent.*